UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
COLEEN ANN VISCO,

                      Plaintiff,

           -against-               MEMORANDUM & ORDER
                                   13-CV-0011(JS)(WDW)

BRENTWOOD UNION FREE SCHOOL
DISTRICT,

                      Defendant.
--------------------------------------X
APPEARANCES
For Plaintiff:      Coleen Ann Visco, pro se
                  182 Woodlawn Avenue
                  Ronkonkoma, NY 11779

For Defendant:      Kelly E. Wright, Esq.
                  Devitt Spellman Barrett, LLP
                  50 Route 111
                  Smithtown, NY 11787

SEYBERT, District Judge:

        Currently pending before the Court is defendant
Brentwood Union Free School District's ("Defendant" or the
"District") motion to dismiss pro se plaintiff Coleen Ann
Visco's ("Plaintiff") Complaint. For the following reasons,
Defendant's motion to dismiss is GRANTED IN PART and DENIED IN
PART.

<u>BACKGROUND</u>[1]

A. <u>Factual Background</u>

Plaintiff commenced this action on January 2, 2013 against Defendant asserting, <u>inter alia</u>, violations of the Age Discrimination in Employment Act of 1967, as codified 29 U.S.C. §§ 621-634 ("ADEA").  Plaintiff, who was fifty-five at the time that she first commenced this case, alleges that she became aware in September 2008 that Defendant had given younger teachers tenured positions and that Defendant had denied her such opportunities given her age.  (Compl. ¶ 5.)

Plaintiff began working for Defendant in 1994 as a Teacher's Assistant.  (Interoffice Memo.[2] at 1.)  While working for Defendant, she also attended school, and Plaintiff ultimately became a dual certified teacher in Childhood Education and Childhood Education-Students with Disabilities. (Interoffice Memo. at 1.)  In September 2004, the District's Assistant Superintendent of Special Education, Mr. Robert Bronzo, hired Plaintiff as a permanent substitute teacher.

---

[1] The following facts are taken from Plaintiff's Complaint and the documents attached thereto.  Although the Court has not necessarily adopted any of the findings of the New York State Division of Human Rights ("NYSDHR"), the NYSDHR documents are helpful in fleshing out the factual background of this case.

[2] The "Interoffice Memo." is a memorandum from the Suffolk County Human Rights Commission; it is attached as an exhibit to the Complaint at Electronic Case Filing ("ECF") system Entry 1-2 pages one through four.

(Interoffice Memo. at 1.) Plaintiff worked as a permanent substitute teacher and per diem from 2004 to 2008. (Interoffice Memo. at 1.)

In June 2007, Plaintiff met with Mrs. Victoria Regan, who subsequently became the District's Director of Special Services. (Interoffice Memo. at 2; NYSDHR Op.[3] ¶ 18.) Plaintiff believed that this meeting was an interview for a position in a "level four" class. (Interoffice Memo. at 2.) In August 2007, Mr. James Gesseck, the District's new Assistant Director of Special Services, called Plaintiff and offered her a position in a level four class. (Interoffice Memo. at 2; NYSDHR Op. ¶ 21.) Plaintiff initially believed that the position was for the full school year and was a probationary teaching position. (Interoffice Memo. at 2; NYSDHR Op. ¶ 22). She subsequently learned, however, that it was a six-month leave replacement contract and not a probationary teaching position. (Interoffice Memo. at 2; NYSDHR Op. ¶ 23.) Nonetheless, Plaintiff accepted. Ultimately, her six-month contract was renewed for another six-month period, and Plaintiff worked the full 2007-2008 school year. (Interoffice Memo at 2; NYSDHR Op. ¶ 24.)

---

[3] The "NYSDHR Op." is the Recommended Findings of Fact, Opinion and Decision, and Order issued by the NYSDHR on May 30, 2012; it is attached as an exhibit to the Complaint at ECF Entry 1-2 pages five through fifteen.

In May 2008, Plaintiff again met with Mrs. Regan. (Interoffice Memo. at 3.) Plaintiff did not realize until the actual meeting that Mrs. Regan was interviewing Plaintiff. (Interoffice Memo. at 3.) Although Mrs. Regan provided Plaintiff with positive feedback, she informed Plaintiff that they did not have a probationary position for her and that she could be a permanent substitute teacher again. (Interoffice Memo. at 3.) One month later, however, Plaintiff learned that three younger individuals had reached tenure--Rebecca Simnowitz-Rodriguez, who was in her late 20's or early 30's; Anita Krumholz, who was in her 40's; and Stephanie Tirico, who was in her 30's. (Interoffice Memo. at 3.) In order to reach such tenured positions, these women must have been in probationary positions for three years. (Interoffice Memo. at 3.)

Over the summer of 2008, Plaintiff twice spoke with Mr. Gessek about the next school year. (Interoffice Memo. at 3.) However, Mr. Gessek stated that they did not have a position for Plaintiff. (Interoffice Memo. at 3.) Plaintiff asked if her age had anything to do with the lack of available positions, but Mr. Gessek responded in the negative. (Interoffice Memo. at 3.)

Thereafter, Defendant offered Plaintiff a one-year position at the Northeast School. (Interoffice Memo. at 4; NYSDHR Op. ¶ 33.) Plaintiff accepted the position and began

4

working at the Northeast School, where Mr. Kevin McWhirter was the Principal.  (Interoffice Memo. at 4; NYSDHR Op. ¶ 34.)  On September 8 or 9, 2008, there was an incident in Plaintiff's classroom in which Plaintiff held a student's wrist in order to prevent him from throwing a backpack at another student. (Interoffice Memo. at 4; NYSDHR Op. ¶ 37.)  Mr. McWhirter met with Plaintiff about the incident on September 10, 2008, informing Plaintiff that the school had a "hands off" policy. (Interoffice Memo. at 4; NYSDHR Op. ¶¶ 37-38.)

Shortly after that meeting with Principal McWhirter, Plaintiff resigned.  (NYSDHR Op. ¶ 40.)

B. Procedural Background

Plaintiff filed a complaint with the Suffolk County Human Rights Commission on May 7, 2009.  (See generally Interoffice Memo.)  On July 10, 2009, she filed a charge with the NYSDHR and subsequently with the United States Equal Employment Opportunity Commission ("EEOC") in 2010 or 2011. (Compl. ¶¶ 9-10.)  On May 30, 2012, the NYSDHR determined that Plaintiff's complaint was time-barred and that the record did not support Plaintiff's claim of retaliation.  (See generally NYSDHR Op.)  On October 3, 2012, the EEOC adopted the NYSDHR's

findings.   (See EEOC Op.[4])   Plaintiff received a right-to-sue letter from the EEOC on October 5, 2012.   (Compl. ¶ 12.)

## DISCUSSION

The Court will first address the legal standard of review applicable to 12(b)(6) motions to dismiss before turning to Defendant's motion more specifically.

## I. Legal Standard

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

---

[4] The "EEOC Op." is the EEOC's Dismissal and Notice of Rights; it is attached as an exhibit to the Complaint at ECF Docket 1-2 page sixteen.

II.  Defendant's Motion

        Defendant moves to dismiss Plaintiff's Complaint on three grounds: (1) Plaintiff did not timely serve the Complaint on Defendant; (2) the determination of the NYSDHR, adopted by the EEOC, is entitled to res judicata effect; and (3) Plaintiff's claims are barred by the statute of limitations. The Court will address each argument in turn.

    A. Service

        Defendant first maintains that Plaintiff's Complaint is subject to dismissal because the Complaint was not timely served on Defendant within 120 days.  Although the Court agrees that the Complaint was not served within 120 days, the Court disagrees that this is an appropriate basis for dismissal.

        Plaintiff commenced this action on January 2, 2013. Accordingly, service should have been completed by May 2, 2013. However, the Court erroneously directed Plaintiff to serve Defendant by May 9, 2013.  (See Docket Entry 4.)  Plaintiff then complied with the Court's Order, serving Defendant on May 7, 2013.  (See Docket Entry 5.)

        The Court may extend the time to serve a defendant upon a showing of good cause.  Rule 4(m) of the Federal Rules of Civil Procedure provides:

            If a defendant is not served within 120 days
            after the complaint is filed, the court—-on
            motion or on its own after notice to the

7

> plaintiff—must dismiss the action without
> prejudice against that defendant or order
> that service be made within a specified
> time. But if the plaintiff shows good cause
> for the failure, the court must extend the
> time for service for an appropriate period.

The rule further "allows the court, in its discretion, to extend the time for service, even if the plaintiff fails to show good cause." Blessinger v. United States, 174 F.R.D. 29, 31 (E.D.N.Y. 1997); accord Zapata v. City of N.Y., 502 F.3d 192, 196 (2d Cir. 2007). "The following two factors are relevant in a Court's evaluation of good cause: (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." Husowitz v. Am. Postal Workers Union, 190 F.R.D. 53, 57 (E.D.N.Y. 1999) (citing Blessinger, 174 F.R.D. at 30).

Courts in analogous situations have found good cause. See Romandette v. Weetabix Co., Inc., 807 F.2d 309, 311 (2d Cir. 1986) ("[T]he interests of justice, informed by a liberal interpretation of Rule 4, are best served by allowing this litigant to rely on the personal service, albeit untimely, ultimately effected by the Marshal's Service."); Husowitz, 190 F.R.D. at 57 (finding that a delay of the Marshals Service constitutes good cause and collecting cases in this regard); Stoenescu v. Jablonsky, 162 F.R.D. 268, 270 (S.D.N.Y. 1995) ("The failure of the Marshals Service to properly effect service

of process constitutes 'good cause' within the meaning of Rule 4(m)."). In any event, given Plaintiff's pro se status and her reasonable reliance on the Court's erroneous Order, an extension is warranted and Defendant's motion in this regard is DENIED.

   B. Res Judicata

      Defendant next asserts that the Order of the NYSDHR, adopted by the EEOC, is entitled to res judicata effect. The Court disagrees.

      Generally, "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tennesee v. Elliot, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) (internal quotation marks and citation omitted) (alteration in original). Thus, Defendant maintains that, because the NYSDHR was sitting in a judicial capacity and issued a decision only after a full hearing, the NYSDHR's decision is entitled to preclusive effect. In support, Defendant cites to inapposite cases discussing preclusion in the context of claims pursuant to 42 U.S.C. § 1983. See Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 728 (2d Cir. 2001) (noting the differences between preclusion in Section 1983 cases and employment discrimination

9

cases); Johnson v. Cnty. of Nassau, 411 F. Supp. 2d 171, 179 n.4 (E.D.N.Y. 2006) (same); see also Gertskis v. U.S. E.E.O.C., No. 11-CV-5830, 2013 WL 1148924, at *9 n.9 (S.D.N.Y. Mar. 20, 2013) (noting that preclusion due to state administrative proceedings applies differently in the employment discrimination context from Section 1983 claims).

However, the United States Supreme Court and courts within this Circuit have made clear that an NYSDHR decision does not preclude an employment discrimination claim absent judicial review in state or federal courts. See, e.g., Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991) ("[T]he Age Act . . . carries an implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims."); Murphy v. Suffolk Cnty. Cmty. Coll., No. 10-CV-0251, 2011 WL 5976082, at *7 (E.D.N.Y. Nov. 29, 2011) ("[U]nreviewed state administrative findings have no preclusive effect on federal court proceedings."). Accordingly, Defendant's motion to dismiss based on res judicata is DENIED.

C.   Timeliness--Plaintiff's Claims of Failure to Promote Failure to Hire, and Unequal Terms and Conditions of Employment

Defendant maintains that Plaintiff's ADEA claims are untimely as she failed to file with the EEOC or a designated state investigative agency within 300 days of the allegedly

discriminatory act.   To the extent that Plaintiff intends to bring a claim under the New York State Human Rights Law ("NYSHRL"), Defendant asserts that Plaintiff's claim is barred by the one-year statute of limitations.   The Court agrees with the exception of Plaintiff's claim regarding a position for the 2008-2009 school year.

Like claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), employment discrimination claims under the ADEA are considered timely if Plaintiff:   (1) timely filed an administrative charge, (2) received a right-to-sue letter, and (3) commenced suit within ninety days of receiving the right-to-sue letter.   See 42 U.S.C. § 2000e-5(e), (f); 29 U.S.C. § 626(d).   "Discrimination claims under Title VII and the ADEA must ordinarily be 'filed' with the EEOC within 180 days of the date on which the 'alleged unlawful employment practice occurred.'"   Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996) (quoting 42 U.S.C. § 2000e-5(e)(1)); see also 29 U.S.C. § 626(d)(1).   "However, if the alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws, then the time period for 'fil[ing]' claims with the EEOC is extended to 300 days."   Id. (alteration in original) (citing 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d)(2), 633(b)).   Thus, in New York, a plaintiff typically

has 300 days after the alleged discriminatory act to file a charge with either the EEOC or the NYSDHR. Harris v. City of N.Y., 186 F.3d 243, 248 n.2 (2d Cir. 1999). Similarly, under the NYSHRL, "[a]ny complaint . . . must be so filed within one year after the alleged unlawful discriminatory practice." N.Y. Exec. Law § 297(5).

Defendant asserts that, because Plaintiff's claims relate to alleged discriminatory acts prior to 2008, her claims are time-barred. Plaintiff counters that her claims are timely because "three much younger teachers were given tenure . . . in September of 2008" and because it was not until such time that Plaintiff became aware that Defendant had given younger teachers probationary positions leading up to their tenure. (Pl.'s Opp. Aff., Docket Entry 9, ¶¶ 7-8.) Neither assertion saves her claims.[5]

First, Plaintiff alleges that Defendant discriminated against her by failing to promote or hire her in a probationary position. (See Compl. ¶ 5 ("I was never given those tenure track opportunities because of my age.").) Thus, the date that others received tenure is not directly relevant; rather, the dates when probationary positions were available but filled by

_____

[5] For purposes of this analysis, Plaintiff's claims are untimely regardless of whether the Court looks to Plaintiff's July 10, 2009 charge with the NYSDHR or her May 7, 2009 charge filed with the Suffolk County Human Rights Commission.

younger individuals are of importance. Second, the pertinent inquiry is when Plaintiff had notice of Defendant's allegedly discriminatory acts, not when she became aware of such. See Francis v. Blaikie Grp., 372 F. Supp. 2d 741, 746 (S.D.N.Y. 2005) ("The 300-day period starts to run when the claimant receives notice of the allegedly discriminatory act . . . ." (internal quotation marks and citation omitted)); Tarr v. Coll. of Staten Island of City Univ. of N.Y., No. 92-CV-6058, 1993 WL 322842, at *2 (S.D.N.Y. Aug. 18, 1993) (rejecting the plaintiff's contention that his employment discrimination claim accrued when defendant hired a younger person for the job or when the plaintiff became aware that the defendant hired a younger person for the job, holding instead that the relevant point in time was when the plaintiff was notified that he would not be hired). Furthermore, each alleged failure to promote or hire Plaintiff constitutes a discrete act, beginning the statutory time period anew. See Thomas v. N.Y. City Dep't of Educ., 938 F. Supp. 2d 334, 348 (E.D.N.Y. 2013) ("Although it may be unclear whether the instances in which Plaintiff was passed over for the guidance counselor position constitute a failure to promote or denial of transfer, it is clear that these instances fit one or both of these categories and, therefore, fall within the Supreme Court's definition of discrete acts.").

Plaintiff's arguments, however, implicate potential equitable tolling.  See id. at 347 (noting that the 300-day limit is analogous to a statute of limitations and therefore subject to tolling).  "[T]he doctrine of equitable tolling applies only in rare and exceptional circumstances, where a party has been prevented in some extraordinary way from exercising his rights."  Francis, 372 F. Supp. 2d at 747 (internal quotation marks and citation omitted).  In making this determination, "a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Id. (quoting Zerilli-Edelglass v. N.Y.C. Trans. Auth., 333 F.3d 74, 80-81 (2d Cir. 2003)).

Plaintiff maintains that "Defendant's hiring practices were so incredibly vague and misleading that she was unaware that probationary positions were available or being filled." (Pl.'s Opp. Aff. ¶ 6.)  She further asserts that "Defendant, [and] specifically Victoria Regan, actively misled [Plaintiff] to believe that the only positions available were non-probationary leave replacement positions which had been intermittently offered to the Plaintiff." (Pl.'s Opp. Aff. ¶ 7.)  However, Plaintiff's allegations demonstrate that, as to

14

alleged discriminatory acts prior to September 2008, Plaintiff could have been aware of such before receiving explicit confirmation.

For example, prior to September 2008, Plaintiff repeatedly questioned whether her age was involved in Defendant's failure to place her in a probationary position. See O'Leary v. Town of Huntington, No. 11-CV-3754, 2012 WL 3842567, at *7 (E.D.N.Y. Sept. 5, 2012) (finding that equitable tolling to the date when the plaintiff was terminated was not warranted in part because the plaintiff's counsel sent a letter prior to termination indicating that the defendant's acts could be considered discriminatory). In June 2007, Plaintiff specifically raised the number of interviews that she had been on without receiving a probationary position. (Interoffice Memo. at 2.) Additionally, by October 2007, Plaintiff was actively questioning whether her age was a factor. (See Interoffice Memo. at 2-3 (discussing Plaintiff's conversation with her union president in which Plaintiff asked if she had not been credited time toward a probationary position due to her age); see also id. at 3 (discussing July 2008 conversation between Plaintiff and Mr. Gessek in which Plaintiff indicated that she was upset and felt that her age may have been the reason she was not being hired).) Such instances demonstrate that Plaintiff could have, and indeed did, suspect

15

discrimination well before she definitely learned of younger teachers receiving tenure. See Grosso v. Queens Coll., No. 03-CV-2619, 2004 WL 583767, at *5 (S.D.N.Y. Mar. 23, 2004) ("Plaintiff's suspicion could have easily been aroused by the thin excuses for continually undelivered promises he recounts in his Amended Complaint . . . .").

Moreover, nothing in the Complaint or the attached documents indicates that Defendant misled Plaintiff by proffering seemingly neutral reasons for failing to hire her in a probationary position. See Tarr, 1993 WL 322842, at *3 ("Equitable tolling is . . . inappropriate, because plaintiff could have discovered the basis for his claim almost immediately after he incurred the injury."); contra Hoffkins v. Monroe-2 Orleans Boces, No. 06-CV-6403, 2007 WL 1288210, at *3 (W.D.N.Y. May 2, 2007) (denying the defendant's motion to dismiss on timeliness grounds where the plaintiff alleged that "she was specifically informed that her termination was a budgetary matter only"). Rather, Plaintiff was repeatedly told that there were no positions for her. (See, e.g., Interoffice Memo. at 3 (during May 2008, Mrs. Regan informed Plaintiff that they did not have anything for her); id. (during June 2008, Mr. Gessek informed Plaintiff that "they had nothing for her"). See also Talyansky v. Mercury Print Prods., Inc., 25 F. Supp. 2d 151, 154 (W.D.N.Y. 1998) ("The complaint merely states that [plaintiff's]

temporary agency informed her that [defendant] 'had no more work' for her.").  At most, Mr. Gessek denied that Plaintiff's age had anything to do with Defendant's hiring decisions, without any explanation of why Plaintiff had continually been passed over for a probationary position despite her stellar performance record.  Accordingly, Plaintiff has not alleged sufficiently extraordinary circumstances to warrant equitable tolling.

Thus, Defendant's motion to dismiss Plaintiff's claims of age discrimination prior to September 2008 is GRANTED.

D. <u>Plaintiff's Retaliation Claim</u>

Defendant also correctly notes that Plaintiff failed to file her retaliation claim under the ADEA with the NYSDHR or EEOC within 300 days.  However, to the extent that such alleged retaliatory events occurred in September 2008, and therefore are arguably timely, Plaintiff's retaliation claim is otherwise meritless.[6]

To establish a prima facie claim of retaliation, a plaintiff must show: "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging

---

[6] District courts have inherent authority to dismiss meritless claims <u>sua sponte</u>.  <u>See</u> <u>Fitzgerald v. First East Seventh Street Tenants Corp.</u>, 221 F.3d 362, 363-64 (2d Cir. 2000).

in the protected activity and the adverse employment action."[7] Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (citing Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006)).  In the context of a claim for discrimination under the ADEA, "[a] plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).  To be considered materially adverse, the change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  Galabya, 202 F.3d at 640 (internal quotation marks and citation omitted).  The Second Circuit has held that such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,  [or]  significantly  diminished  material responsibilities."  Id.; see also Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006).

        Here, though, the only alleged retaliation is that Principal McWhirter spoke with Plaintiff regarding the school's

_____

[7] "[A]ge discrimination suits brought under the State HRL and City HRL are subject to the same analysis as claims brought under the ADEA."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

"hands off" policy.  (See Interoffice Memo. at 4.)  Plaintiff does not allege that this conversation involved any disciplinary action or any change in her employment status.  Thereafter, Plaintiff voluntarily resigned.  Accordingly, to the extent that a retaliation claim is potentially timely, it is otherwise meritless.

III. Leave to Replead

     Although Plaintiff has not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated."  Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)).

     Notably, Defendant's only successful argument--i.e., timeliness under the "statute of limitations"--focuses on Plaintiff's claims of discrimination prior to 2008.  Certainly, Defendant is correct that the Complaint and Plaintiff's opposition to the motion to dismiss both highlight Plaintiff's alleged awareness of age discrimination after the tenure of

three younger teachers was announced in 2008. Accordingly, Plaintiff's assertions of discrimination appear to implicate employment decisions prior to that time. However, Defendant wholly ignores that a liberal construction of Plaintiff's Complaint also leads to the conclusion that Plaintiff intends to assert a claim of discrimination for the 2008-2009 school year as well. (See Compl. ¶ 8.) Specifically, the Complaint can be read to assert that Defendant denied Plaintiff a probationary position for the 2008-2009 school year.

It is unclear whether Plaintiff intends to pursue such a claim. In fact, the Court notes that the NYSDHR concluded that Plaintiff could not demonstrate that there were any probationary positions available for the 2008-2009 school year. (NYSDHR Op. ¶ 44.) Nonetheless, Defendant has not argued against the timeliness of any such claim, and Plaintiff could theoretically assert a viable claim in this regard. Accordingly, Plaintiff is GRANTED leave to amend her Complaint to assert only a claim of age discrimination insofar as she can plausibly allege that she was denied an available probationary position for the 2008-2009 school year and that she timely pursued said claim.

The Court otherwise finds that Plaintiff's claims are not viable and they are therefore DISMISSED WITH PREJUDICE.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendant's motion on the grounds of untimely service and res judicata is DENIED. Defendant's motion on the grounds that Plaintiff's claims of age discrimination for events prior to 2008 is GRANTED, and such claims are DISMISSED WITH PREJUDICE. Additionally, Plaintiff's claim of retaliation is also <u>sua sponte</u> DISMISSED WITH PREJUDICE.

Finally, Plaintiff is GRANTED leave to amend her Complaint to assert only a claim of age discrimination insofar as she can plausibly allege that she was denied an available probationary position for the 2008-2009 school year and that she timely pursued said claim. If Plaintiff intends to pursue this claim, she must file an Amended Complaint on or before February 10, 2014. If she fails to do so, her Complaint will be dismissed with prejudice in full and the case will be closed.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

The Court certifies that pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to pro se Plaintiff.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

DATED:     January 8, 2014
           Central Islip, New York


                              22